IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Quinton Dewayne Inman, #298283, | ) | C/A No.: 1:15-2399-JMC-SVH |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Larry Cartledge,[1] | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Quinton Dewayne Inman ("Petitioner"), is an inmate at the McCormick Correctional Institution of the South Carolina Department of Corrections who filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civ. Rule 73.02(B)(2)(c) (D.S.C.) for a Report and Recommendation on Respondent's return and motion for summary judgment. [ECF Nos. 15, 16]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Respondent's motion by November 23, 2015. [ECF No. 17]. Petitioner failed to respond. The court issued an order on November 30, 2015, directing Petitioner to advise the court whether he wished to continue with his case and to file a response to Respondent's motion by December 14, 2015. [ECF No. 19].   Petitioner filed a response on December 14, 2015. [ECF No. 21].

---

[1] Plaintiff incorrectly named Respondent as "Leroy Cartiedge. The Clerk of Court in instructed to correct Resdpondent's name on the docket.

Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that the court grant Respondent's motion for summary judgment.

I.    Factual and Procedural Background

At trial, the state presented evidence that Petitioner and Quinton McCray ("McCray") attacked Cheryl White ("White") after she drove her car to a carwash and put something in the trash. [ECF No. 15-1 at 359]. As White returned to her car, Petitioner hit her with a beer bottle and dragged her to the rear of her car. *Id.* at 359–60. Petitioner and McCray hit White several more times with their fists and the beer bottle. *Id.* at 361. Petitioner slammed White into the trunk, where White hit her head. *Id*. at 362. Petitioner hit White again and McCray closed the trunk with White in it. *Id.* at 362–63.   Petitioner drove with McCray towards Marion. *Id.* at 363. McCray said he heard White kicking in the trunk until they passed over a bridge and then he thought White was dead because he did not hear her kicking anymore. *Id.* at 366–68. Petitioner and McCray drove around in White's car for several hours. *Id.* at 366–71. They picked up some of McCray's friends, stopped at the store, and visited at McCray's friend's house for approximately one hour. *Id.* at 367– 70. Once the group left McCray's friend's house, McCray drove White's car and let Petitioner out after he wiped down the car. *Id.* at 370–72.   Petitioner wiped the car down before he exited. *Id.* at 371. he following day, police found the car with White deceased in the trunk. *Id*. at 445–46.

Petitioner was indicted by the Marion County grand jury during the August 2006 term of court for murder (2006-GS-33-203) [ECF No. 15-2 at 94–95]. Petitioner was represented by Shannon Prosser, Esq., and proceeded to a jury trial on August 4–6, 2008, before the Honorable Thomas A. Russo, Circuit Court Judge. [ECF No. 15-1 at 3 *et seq.*]. The jury found Petitioner guilty as charged. [ECF Nos. 15-1 at 502; 15-2 at 3–5]. Judge Russo sentenced Petitioner to life without the possibility of parole. [ECF No. 15-2 at 11].

Petitioner appealed his conviction and sentence to the South Carolina Court of Appeals ("Court of Appeals"). [ECF No. 15-3 at 1]. On appeal, Petitioner was represented by Chief Appellate Defender Joseph L. Savitz, III, Esq., of the South Carolina Commission on Indigent Defense, Division of Appellate Defense. [ECF No. 15-4]. Attorney Savitz filed an *Anders*[2] brief on or about October 9, 2009, raising the following issue: "The trial judge committed reversible error by failing to instruct the jury on the law of accessory after the fact." *Id.* at 4. Attorney Savitz certified that the appeal was without merit and asked to be relieved as counsel. *Id.* at 8. Petitioner filed a pro se response to the *Anders* brief on October 27, 2009, raising the following issues:

1) The trial judge erred during the course of trial by making comments which tended to indicate his opinion as to the credibility of the witness testimony.

---

[2] *Anders v. California*, 386 U.S. 738, 744 (1967), requires that counsel who seeks to withdraw after finding the "case to be wholly frivolous" following a "conscientious examination" must submit a brief referencing anything in the record that arguably could support an appeal, furnish a copy of that brief to the defendant, and after providing the defendant with an opportunity to respond, the reviewing court must conduct a full examination of the proceedings to determine if further review is merited.

2) The trial judge erred in bringing forth the "hand of one is the hand of all theory" when appellant was not indicted for all crimes committed in this action.

[ECF No. 15-5 at 4].

On October 21, 2010, the Court of Appeals filed an unpublished decision dismissing the appeal and granting counsel's request to withdraw. [ECF No. 15-6]. The remittitur was issued on November 8, 2010. [ECF No. 15-7].

Petitioner filed an application for post-conviction relief ("PCR") on June 17, 2011, in which he alleged abuse of judicial discretion and failure to properly instruct the jury. [ECF No. 15-2 at 13–18]. A PCR evidentiary hearing was held before the Honorable Michael Nettles, Circuit Court Judge, on February 11, 2014, at which Petitioner and his PCR counsel, Heather Cannon, Esq., appeared. *Id.* at 24–80. On March 7, 2014, Judge Nettles issued an order of dismissal. *Id.* at 81–92.

Petitioner appealed from the denial of PCR. [ECF No. 15-8]. On appeal, he was represented by Appellate Defender David Alexander, Esq., of the South Carolina Commission on Indigent Defense, Division of Appellate Defense, who filed a *Johnson* petition[3] for writ of certiorari in the South Carolina Supreme Court on or about February 13, 2015. [ECF No. 15-9]. Attorney Alexander raised the following issue:

---

[3] *Johnson v. State*, 364 S.E.2d 201 (S.C. 1988) (applying the factors of *Anders v. California*, 386 U.S. 738 (1967), to post-conviction appeals). *Anders* requires that counsel who seeks to withdraw after finding the "case to be wholly frivolous" following a "conscientious examination" must submit a brief referencing anything in the record that arguably could support an appeal, furnish a copy of that brief to the defendant, and after providing the defendant with an opportunity to respond, the reviewing court must conduct a full examination of the proceedings to determine if further review is merited. *Anders*, 386 U.S. at 744.

> Whether trial counsel's failure to introduce a recorded statement that would have impeached the State's star witness who testified that petitioner murdered the victim constituted ineffective assistance of counsel in derogation of petitioner's Sixth Amendment rights?

*Id.* at 3. Petitioner's counsel asserted that the petition was without merit and requested permission to withdraw from further representation. *Id.* at 11. Petitioner filed a pro se brief on April 9, 2015. [ECF No. 15-10].

By order dated May 20, 2015, the South Carolina Court Supreme Court denied the petition for certiorari. [ECF No. 15-11]. The remittitur was issued on June 5, 2015. [ECF No. 15-12].

Petitioner filed this federal petition for a writ of habeas corpus on June 8, 2015. [ECF No. 1-1 at 2].[4]

II.    Discussion

A.    Federal Habeas Issues

Petitioner now asserts he is entitled to a writ of habeas corpus on the following claims:

**Ground One**:    Failure to do a thorough back ground check and investigate social history

Supporting Facts: had counsole done a thorough investigation he would have reconized some mental health issues that would have mitigated the circumstances (appendix) pg 526 line 13–23

_____

[4]  The petition was received by the court on June 11, 2015, and docketed on June 15, 2015. [ECF Nos. 1; 1-1 at 1]. However, because Petitioner is incarcerated, he benefits from the "prison mailbox rule." *Houston v. Lack*, 487 U.S. 266 (1988). The envelope containing the petition was deposited in the prison mailing system on June 8, 2015. [ECF No. 1-1 at 2].

**Ground Two**:      Failure to play recorded statement given by Anthony McCray

                    <u>Supporting Facts:</u> Violated the defendants right to a fair trial, because he could not prepare a proper defense, not knowing what the statement said.

**Ground Three**:      Failure to object to photographic evidence

                    <u>Supporting Facts:</u> Console failed to object when the walker could not be placed to nobody connected with the crime (appendix) pg 529 lines 10 – 530 line 2

**Ground Four**:      Failure to object to D.N.A and autopsy

[ECF Nos. 1 at 5–10] (errors in original).

      B.      Standard for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* At the summary judgment stage, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e).

C.     Habeas Corpus Standard of Review

1.     Generally

Because Petitioner filed his petition after the effective date of the AEDPA, review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Noland v. French*, 134 F.3d 208, 213 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 410. Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

2. Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

a. Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

(b)    (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that—

      (A)    the applicant has exhausted the remedies available in the courts of the State; or

      (B)    (i) there is an absence of available State corrective process; or

            (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)   An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203 SCACR; S.C. Code Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976). If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266 (S.C. 2007).[5] Furthermore, strict time deadlines govern direct appeal and the filing of a PCR in

---

[5] In *Bostick v. Stevenson*, 589 F.3d 160, 162–65 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007, decision in *Marlar*, South Carolina courts had not been uniformly and strictly enforcing the failure to file a motion pursuant to Rule 59(e), SCRCP, as a procedural bar. Accordingly, for matters

the South Carolina courts. A PCR must be filed within one year of judgment, or if there is

an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

The United States Supreme Court has held that "state prisoners must give the state

courts one full opportunity to resolve any constitutional issues by invoking one complete

round of the State's established appellate review process"—which includes "petitions for

discretionary review when that review is part of the ordinary appellate review procedure in

the State." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). This opportunity must be

given by fairly presenting to the state court "both the operative facts and the controlling

legal principles" associated with each claim. *Baker v. Corcoran*, 220 F.3d 276, 289 (4th

Cir. 2000)(internal citations omitted). That is to say, the ground must "be presented face-up

and squarely." *Mallory v. Smith*, 27 F.3d 991, 995 (4th Cir. 1994) (citation and internal

quotation marks omitted).

The South Carolina Supreme Court has held that the presentation of claims to the

state court of appeals without more is sufficient to exhaust state remedies for federal

habeas corpus review. *State v. McKennedy*, 559 S.E.2d 850 (S.C. 2002); *see also In re*

*Exhaustion of State Remedies in Criminal and Post–Conviction Relief Cases*, 471 S.E.2d

454 (S.C. 1990). The *McKennedy* court held that *In re Exhaustion* had placed discretionary

review by the South Carolina Supreme Court "outside of South Carolina's ordinary

appellate review procedure pursuant to *O'Sullivan*." 559 S.E.2d at 854.  As such, it is an

"extraordinary" remedy under *O'Sullivan*, "technically available to the litigant but not

in which there was a PCR ruling prior to November 5, 2007, the court will not consider any
failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

required to be exhausted." *Adams v. Holland*, 330 F.3d 398, 403 (6th Cir. 2003).

Because the South Carolina Supreme Court has held that presentation of certain claims to the Court of Appeals without more is sufficient to exhaust state remedies, a claim is not procedurally barred from review in this court for failure to pursue review in the South Carolina Supreme Court after an adverse decision in the Court of Appeals.

b.      Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the Supreme Court explains:

. . . [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10–11 (1984).

        3.      Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the state courts in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or by "prov[ing] that failure to consider the claims will result in a fundamental miscarriage of justice." *Lawrence v. Branker*, 517 F.3d 700, 714 (4th Cir.), *cert. denied*, 555 U.S. 868 (2008). A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor that hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.* Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

        4.      Ineffective Assistance of Counsel Claims

To prevail on his ineffective assistance of counsel claims, Petitioner must show (1) that his trial counsel's performance fell below an objective standard of reasonableness, and

(2) that a reasonable probability exists that but for counsel's error, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). The court must apply a "strong presumption" that trial counsel's representation fell within the "wide range of reasonable professional assistance," and the errors must be "so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Harrington v. Richter*, 562 U.S. 86, 104 (2011). This is a high standard that requires a habeas petitioner to show that counsel's errors deprived him "of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. That the outcome would "reasonably likely" have been different but for counsel's error is not dispositive of the prejudice inquiry. Rather, the court must determine whether the result of the proceeding was fundamentally unfair or unreliable. *Harrington*, 562 U.S. at 104; *Strickland*, 466 U.S. at 694.

The United States Supreme Court has cautioned that "'[s]urmounting Strickland's high bar is never an easy task[,]' . . . [e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult." *Harrington*, 562 U.S. at 88 (*quoting Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). When evaluating an ineffective assistance of counsel claim, the petitioner must satisfy the highly deferential standards of 28 U.S.C. § 2254(d) and *Strickland* "in tandem," making the standard "doubly" more difficult. *Harrington*, 562 U.S. at 105. In such circumstances, the "question is not whether counsel's actions were reasonable," but whether "there is any reasonable argument that counsel satisfied Strickland's deferential standards." *Id.* The unreasonableness of the state court determination must be "beyond any possibility of

fairminded disagreement." *Id.* at 103. "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102. Section 2254(d) codifies the view that habeas corpus is a "'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Id.* at 102, quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)).

      D.     Analysis

          1.     Merits Review

              a)     Ground One

In Ground One, Petitioner alleges his counsel failed to do a thorough background check and investigate his social history. [ECF No. 1 at 5].

At the PCR hearing, Petitioner stated his counsel could have argued better or mitigated the circumstances a little if he had done a thorough background check and recognized some mental health or social issues. [ECF No. 15-2 at 28].   Petitioner testified counsel "could have changed the sentencing phase, sentencing phase. I believe he could have put a little - - a better more defense up for me what he did [sic]." *Id.* Petitioner stated if trial counsel would have looked into his background "he would have found out a whole lot. He would have found out a whole lot. You know, I mean, dating back to like ninety - - - '94, '95. He would have found out a whole lot." *Id.* at 40. Petitioner testified he did not have any medical records to support this claim. *Id.*

PCR counsel testified he did not recall Petitioner asking him to do an investigation into his background. *Id.* at 62. Counsel stated, "[W]e obviously discussed whether or not he would testify. So I just didn't feel like that was an important issue at the time." *Id.* Counsel

testified he did not have any reason to suspect Petitioner was not competent to stand trial and stated he did not think a mental competence defense was a viable strategy. *Id.*

> The PCR court found counsel was not deficient:

> This Court finds Inman's allegation that Prosser was ineffective for failing to investigate his background and social history is without merit. Failure to conduct an independent investigation is not *per se* ineffective assistance of counsel when the allegation is supported only by mere speculation. Moorehead v. State, 329 S.C. 329, 334, 496 S.E.2d 415, 417 (1998) (citing Kibler v. State, 267 S.C. 250, 227 S.E.2d 199 (1976)). Here, Prosser went over the charges, and the elements and potential defenses to those elements with Inman at great length prior to trial. It is uncontroverted that the [trial] strategy and defense developed through Inman's pre-trial discussions with [his] attorney focused around his absence from the scene of the crime. Inman presented no testimony regarding what further evidence trial counsel could have uncovered that would have bolstered his defense. On this point, this Court finds very credible trial counsel's testimony that Inman's mental capacity and competency was never an issue. Thus, Inman has failed to meet his burden of proving counsel was ineffective for failing to investigate his past.

*Id.* at 87.

In his opposition to summary judgment, Petitioner alleges the PCR court erred in denying him relief on this ground. [ECF No. 21 at 3]. Petitioner argues the American Bar Association requires a lawyer to do a thorough background check, which his lawyer failed to do. *Id.* Petitioner claims "if his lawyer was within guidelines the courts would have know it was not speculation, but mental health, family dysfunction issues was their." *Id.*

The undersigned finds the PCR court made reasonable findings of fact and reasonably applied federal law in denying Petitioner's claim concerning his counsel's failure to perform a background check. The PCR court's factual findings are based, in part, on its assessment that Petitioner's testimony was not credible, while trial counsel's

testimony was credible. The PCR court's credibility determination is entitled to deference in this action. *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)) ("[F]or a federal habeas court to overturn a state court's credibility judgments, the state court's error must be stark and clear."); *see also Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) ("28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."). Petitioner may overcome this presumption of correctness only by showing "'clear and convincing evidence to the contrary.'" *Wilson v. Ozmint*, 352 F.3d 847, 858–59 (4th Cir. 2003) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 240 (2003)). Petitioner has shown no cause to discount the PCR court's credibility determination.

Although Petitioner alleges his counsel failed to properly investigate his background, the evidence presented to the PCR court does not support Petitioner's contention. During the PCR hearing, Petitioner failed to offer any evidence concerning the specific facts in his background that would have impacted his defense or the court's sentence. Further, Petitioner's counsel testified that prior to trial he reviewed with Petitioner his version of events, the witness statements, and any potential defenses. [ECF No. 15-2 at 58–61]. Counsel explained Petitioner was not planning on testifying and therefore Petitioner's mental capacity was not important. *Id.* at 68. Accordingly, the undersigned finds the PCR court made reasonable findings of fact and reasonably applied federal law in denying this ineffective assistance of counsel claim.

b)    Ground Two

In Ground Two, Petitioner alleges his trial counsel failed to play a recorded statement given by McCray, which prevented Petitioner and his counsel from preparing a proper defense at trial. [ECF No. 1 at 7].

At the PCR hearing, Petitioner testified he did not have an opportunity to hear McCray's recorded statement. [ECF No. 15-2 at 29]. Petitioner stated he could have impeached McCray with the statement, or "he could have just told the complete truth on his statement." *Id.* at 29–30. Petitioner testified he believed that the playing of the tape "would have turned the tides." *Id.* at 30.

PCR counsel testified he could not say why the recorded statement was not played, "other than [he] did not feel that it benefitted his defense to play it." *Id.* at 66. Counsel stated "if it had benefitted his defense, I certainly would have played it for the jury." *Id.* at 67. When asked how he raised the issue before the jury that McCray's statements differed, counsel testified:

> Yeah. I mean, basically, I wanted to establish him as a liar, and in effect looking back and, of course, I didn't even have to look back because I remembered part of my closing argument in that case, and we tried to basically convince the jury or - - maybe not - - well, we were, obviously, trying to convince a jury, but we were trying to establish that Anthony McCray could not be trusted and that he was the only person who implicated Mr. Inman in the murder. So our analogy was one of sin and all this kind of thing. It was just to kind of bring his character. In essence, Mr. Inman's defense was for me to try Mr. McCray.

*Id.* at 67.

The PCR court rejected this claim:

This Court finds Inman's allegation that Prosser was ineffective for failing to play a recorded statement by his co-defendant, Anthony McCray, is without merit. It is uncontroverted that Anthony McCray furnished several conflicting, sworn statements prior to trial–two written and one recorded. It also appears that the recorded statement Inman alleges his attorney should have played at trial, implicates Inman of the crime.

Where counsel articulates a strategy, it is measured under an objective standard of reasonableness. Ingle v. State, 348 S.C. 467, 560 S.E.2d 401 (2002). Where counsel articulates valid reasons for employing certain strategy, such conduct will not be deemed ineffective assistance of counsel. Stokes v. State, 308 S.C. 546, 419 S.E.2d 778 (1992); Whitehead. v. State, 308 S.C. 119, 417 S.E.2d 529 (1992). As discussed above, the strategy developed by Inman and Prosser was to discredit the statements given by McCray.

It appears Prosser made a strategic decision during the trial to ensure evidence that implicated his client was not introduced, even though it could further discredit McCray. It appears that Prosser made this decision after the conflicting written statements were already in evidence. Furthermore, Inman simply alleges Prosser should have introduced this statement, but failed to demonstrate the prejudicial effect the absence of a sworn, inculpatory, recorded statement made by his co-defendant had on his trial. Therefore, this Court finds that Inman has failed to meet his burden of proving counsel was ineffective for failing to introduce the recorded statement of his co-defendant at trial.

Id. at 87–88.

In his opposition to summary judgment, Petitioner argues the PCR court erred in ruling that he was not prejudiced by the failure to play McCray's recorded statement. [ECF No. 21 at 2]. Petitioner alleges the recorded statement could have helped to impeach McCray and show how the story his co-defendant told did not add up. Id.

The PCR court reasonably found that counsel's failure to introduce McCray's recorded statement was a valid trial strategy because the playing of the recording would not have benefited the defense. Where trial counsel articulates a valid reason for employing

certain trial strategy, such conduct should not be deemed ineffective assistance of counsel if it is objectively reasonable under the circumstances. *Caprood v. State*, 525 S.E.2d 514 (S.C. 2000). Courts must be wary of second guessing counsel's trial tactics; and where counsel articulates a valid reason for employing such strategy, such conduct is not ineffective assistance of counsel if objectively reasonable under the circumstances. *Strickland v. Washington*; *Whitehead v. State*, 417 S.E.2d 529 (S.C. 1992).

Petitioner cannot satisfy the *Strickland* test. He has failed to show the PCR court unreasonably applied United States Supreme Court precedent in deciding his ineffective assistance of counsel claim. Additionally, Petitioner has failed to show by clear and convincing evidence the PCR court reached an unreasonable factual determination given the evidence and record before it. Therefore, Petitioner has failed to overcome the deferential standard of review accorded the state PCR court's determination of these issues.   Petitioner cannot establish that he is entitled to federal habeas relief on this claim under 28 U.S.C. § 2254(d), and the undersigned recommends that Ground Two be denied and dismissed with prejudice.

c)     Ground Three

Petitioner alleges his trial counsel failed to object to the introduction of photographic evidence of a walker that could not be placed with anyone connected with the crime. [ECF No. 1 at 8].

At the PCR hearing, Petitioner testified the introduction of the photographs prejudiced him because: "I mean, I believe because it ain't have no owner [sic]. It tainted

19

be had by Mr. Prosser and Ed Clemmons actually not seen a senior citizen in the courtroom walking with a walker so . . ." [ECF No. 15-2 at 31].

> When asked about the significance of the walker and the pictures, counsel testified,
>
> I thought, personally, that the walker helped him more than it hurt him, but it was yet another piece of evidence that didn't tie him at all to anything. You know, I assume that they - - I assume that they were trying to relate - - that she was at that car wash or whatnot, but to me it had nothing to do with Quintin Inman. That's why we took the strategy we did that that evidence was okay for him anyway, I thought.

*Id.* at 61.

> The PCR court did not find any merit in Petitioner's argument:
>
> This Court finds that Inman's allegation that Prosser was ineffective for failing to object to certain photographic evidence is without merit. It appears that Prosser made a valid strategic decision to withhold any objection to a photograph of a walker because he felt it kept Inman from being linked to the crime, a defense theory developed by Inman and Prosser prior to trial. Therefore, this Court finds that Inman has failed to meet his burden of proving counsel was ineffective for failing to object to this evidence or how he was prejudiced by its introduction.

*Id.* at 88–89.

Petitioner cannot satisfy the *Strickland* test. The PCR court reasonably found counsel's decision to withhold any objection to a photograph of a walker was reasonably related to the defense theory that Petitioner was not involved in the murder because the walker did not link Petitioner to the crime. Accordingly, the court cannot find that there was a substantial likelihood that the result of Petitioner's trial would have been different had his trial counsel objected to the introduction of this photographic evidence. Petitioner has failed to overcome the doubly-deferential standard of review accorded the state court's

determination of this issue of ineffective assistance of counsel under *Harrington*. Petitioner has also not shown that the state court's analysis of this issue misapplied clearly established federal law or, even if there was an error, that it was unreasonable. *See Williams*, 529 U.S. at 410. Based on the foregoing, Petitioner is not entitled to federal habeas relief on this ground, and the undersigned recommends that Ground Three be dismissed.

> d)    Ground Four

In Ground Four, Petitioner claims his counsel was ineffective for failing to object to the DNA and autopsy reports. [ECF No. 1 at 10].

During the PCR hearing, Petitioner testified he and his counsel could not meaningfully prepare for trial because his counsel did not have the autopsy and DNA evidence well in advance of trial. [ECF No. 15-2 at 32].

Counsel testified he filed a motion to exclude the autopsy and DNA reports because the evidence was not produced in a timely manner, but the evidence came in. *Id.* at 57. When questioned about the autopsy report, counsel testified there was "never any debate" about the cause of death. *Id.* at 57–58. Counsel stated he objected to the DNA expert giving different examples of probability because he felt this testimony was prejudicial and "it was just beating a dead horse." *Id.* at 62.

In rejecting this ineffective assistance of counsel claim, the PCR court explained:

> This Court finds that Inman's allegation that Prosser was ineffective for failing to effectively handle objections to DNA testimony and the autopsy report are without merit. It appears that Prosser filed motion in limine seeking to exclude both from being discussed during Inman's trial.

21

> Additionally, it appears that Prosser made an objection during testimony regarding the DNA evidence. Also, it appears the defense strategy, developed by Inman and his attorney, never sought to deny the cause of death of the victim. Instead, it appears the strategy was simply to deny that Inman was ever present during the commission of the crime. Therefore, this Court finds that Inman has failed to meet his burden of proving counsel was ineffective in handling this evidence.

*Id.* at 89.

In his opposition to summary judgment, Petitioner argues he never had a chance to have the DNA independently examined and alleges the pictures of DNA cards were not produced. [ECF No. 21 at 4]. Petitioner claims trial counsel failed to argue the authenticity of the DNA or question the chain of command or where the DNA was stored during "the four year drought." *Id.*

Petitioner cannot satisfy the *Strickland* test. Petitioner fails to offer any evidence challenging the authenticity of the DNA results and therefore Petitioner has failed to offer any evidence to establish the PCR court unreasonably applied United States Supreme Court precedent in deciding this ineffective assistance of counsel claim. Additionally, Petitioner has failed to show by clear and convincing evidence the PCR court reached an unreasonable factual determination given the evidence and record before it. Therefore, Petitioner has failed to overcome the deferential standard of review accorded the state PCR court's determination of these issues. Petitioner cannot establish he is entitled to federal habeas relief on this claim under 28 U.S.C. § 2254(d), and the undersigned recommends that this claim be denied and dismissed with prejudice.

III.    Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends that the court grant

Respondent's motion for summary judgment. [ECF No. 16].

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

March 22, 2016                              Shiva V. Hodges
Columbia, South Carolina                   United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.   Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.   "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"   *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.   28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*   Fed. R. Civ. P. 6(a), (d).   Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**   28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).